| | |
|---|---|
| ZACHARY CARTER<br>Corporation Counsel, City of New York<br>Attorney for<br>City of New York Department of Social Services<br>Human Resources Administration<br>      Office of Child Support Services<br>By: Hugh H. Shull III (HS-0236), Assistant Corp. Counsel<br>100 Church Street, Room 5-233<br>New York, New York 10007<br>(212) 356-2138 | February 7, 2018<br>9:30 a.m. |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
In re:

CHRISTOPHER T. GEORGE,                          Chapter 13
                                                Case No. 18-12824

              Debtor.
------------------------------------------------------X

## OBJECTION OF CITY OF NEW YORK HUMAN RESOURCES ADMINISTRATION TO MOTION FOR TURNOVER, VIOLATION OF THE AUTOMATIC STAY AND DAMAGES

The City of New York Human Resources Administration ("HRA") as and for its objection to the motion by the debtor, Christopher T. George (the "Debtor") for turnover, violation of the automatic stay and damages, dated December 20, 2018 (the "Motion"), to the extent, if any, it is seeking such relief against the City of New York (the "City") or any of its agencies, including, inter alia, HRA, and respectfully states as follows:

      1.      The Motion does not in fact name the City or any of its agencies. Instead it seeks relief against NYS Child Support Processing Center ("NYSCSCP"), which upon information and belief is a State of New York (the "State") entity with a post office box address in Albany, New York. In the Motion itself the NYSCSP is defined as the "Creditor".

2. In the affirmation of Debtor's counsel William Waldner (the "Waldner Affirmation") attached to the Motion as Exhibit C the full name "NYS Child Support Processing Center" is used several times, although in one location although in paragraph 4 the name NYC Child Support Processing Center is used. There is no such City agency or program.

3. The Waldner Affirmation discusses mailings to and conversations with personnel at NYSCSPC, and states that he had not prior to that time contacted NYC Child Support Processing Center but assumed that it had been served with the court generated notice of the meeting of creditors. If he meant the NYSCSPC, this is not a City agency or entity.

4. No City agency is listed on the Creditor Matrix. There is a listing for Child Support Unit with an address of 151 Broadway, New York, NY 10001. This is not an address of any known City agency. HRA's OCSS has a walk-in customer service office at 151 **West** Broadway New York, New York 10013, a completely different address.

5. HRA did not have any information about the case until an electronic referral from the State call center to the Support Collection Unit ("SCU")[1] on December 17, 2018. Based on records contained in the Automated State Support Enforcement and Tracking System ("Assets"), a computer database created and maintained to assist State child support enforcement agencies, the Debtor called the State's call center regarding child support arrears and bankruptcy on November 20, 2019 and was advised to submit proof of the bankruptcy filing to the local district, to wit, OCSS/SCU, which manages his account. As aforesaid an electronic

---

[1] The City's Department of Social Services ("DSS") is the local social services district agency which administers HRA and its programs, the Office of Child Support Services ("OCSS" or SCU) pursuant to Federal State and Local statute and mandate, and specifically NY Social Services Law. The custodial parent receives child support enforcement services under NY Social Services Law sec. 111-g and thereunder DSS and HRA's program OCSS or SCU enforces the child support owed the custodial parent.

referral was made from the State call center was made to OCSS/SCU on December 17, 2018. No documentation had been received by OCSS/SCU or the City, HRA, DSS or in any guise prior to that time regarding the bankruptcy from Debtor, his counsel or the Court. On the same day as the referral SCU's enforcement bankruptcy staff reviewed PACER, validated the bankruptcy filing, and updated ASSETS to reflect bankruptcy status. That same day it also updated the income garnishment code in the state database and the amended the Income Withholding Order ("IWO") was generated and sent out to reflect the current support obligation only, not the arrears.

6. The Debtor filed the Motion on December 24, 2018. The Motion was received by OCSS on December 24, 2018. This was the first time any bankruptcy documentation was received by OCSS, DSS etc. It was sent to an improper place of service, this time on a P.O. Box allocated to SCU's correspondence unit. This service is not reflected on the affidavit of service filed on January 3, 209, which indicates service that day by mail on, inter alia, the NYC Law Department and was received at the undersigned's address on January 7, 2019.

7. All of the foregoing is by way of background that HRA did not have any notice of the bankruptcy filing at all until December 17, 2018, at which time it stopped collection of pre-petition child support arrears. The Motion doesn't name the City, DSS, HRA, OCSS or SCU not are they on the creditor matrix. As further discussed below, collection of child support is not stayed in any event.

## BACKGROUND

8. On or about July 29, 2014, the New York State Family Court for New York County (the "Family Court") entered an order of support for the custodial parent ("CP") for

3

two minor children. On January 18, 2018 the CP filed a modification and a violation petition with the Family Court. On June 4, 2018 the Family Court modified the order of support to order an obligation of $3,000 monthly, payable through the SCU (the "Order of Support"). The Order of Support is, by statute, a wage garnishment order. On the violation petition the Family Court issued a money judgment dated June 4, 2018 in the amount of $12,943 for past due child support (the "Arrears Judgment") payable through SCU, and a money judgment dated July 2, 2018 for counsel fees of $3,587, not payable through SCU.

9. The Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code on September 19, 2019 (the "Filing Date"). The Debtor did not list the City or any of its agencies on the petition or creditors matrix. The only agency to receive notice was the City's Department of Finance, which is automatically on the notice of the 341 meeting and commencement sent by the Bankruptcy Court. OCSS is mandated by State federal and Local Law to issue income executions in support of child support orders.

10. A Plan was also filed on September 19, 2019 (the "Plan"). The Plan provided for domestic support obligation arrearages of $12,000.00 through the Plan in Part 4.5. Part 4.4 provided for ongoing support to be paid outside the Plan.

11. OCSS records indicate that as of the Filing Date of the bankruptcy the arrears had been reduced to $7,708.38. Being unaware of the bankruptcy, OCSS/SCU continued to collect weekly income executions for the custodial parent based on the $3,000 monthly continuing obligation plus $1,500 monthly for the arrears under the Arrears Judgment, neither of which is a violation of the automatic stay.

12. The OCSS/SCU continued to collect on average $1,038.46 weekly via income (which averages $4,500 monthly), although for some weeks less was collected. An

4

income execution of $830.41 was credited on September 19, 2019, the same date as the Filing Date.  The Respondent made a direct payment of $1,300.15 credited on September 21, 2018.  A total of $13,455.94 was collected by income execution for payments through December 27, 2018, the last payment at the rate of $4,500 monthly, which included the $3,000 current monthly obligation and the $1,500 on the arrears basis, was credited.  With the additional $1,300.15 paid by the Debtor credited on September 21, 2018, the total paid post-petition through December 27, 2018, the last date a payment under the combined pre-petition arrears and ongoing obligation rate was credited (there was apparently a short delay before the employer changed the deductions after OCSS/SCU amended and sent out the Income Witholding Order), was $14,486.09.  Since an income execution on January 3, 2019, there have been 4 weekly credited executions of $692.31, which is a monthly rate of $3,00, credited to the current support obligation under the Order of Support, according to OCSS records.

13. As of January 27, 2019, the arrears owed are $2,791.01.

## ARGUMENT

14. HRA submits that it has not violated the automatic stay.  It is collecting a domestic support obligation ("DSO") for a custodial parent pursuant to statute and judicial order, which order is by statute a wage garnishment order.  Therefore ii is excepted from the automatic stay under Bankruptcy Code §362(b)(2)(C).  This section was added when the Bankruptcy Code was amended by passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BACPA").

15. "BACPA greatly enhanced a claimants' ability to collect child support.  Under BACPA, even property of the estate can be subject of an income withholding order as long as it is for payment of a domestic support obligation, without violating the stay.  11 U.S.C.

5

§362(b)(2)(C). Because the definition of a 'domestic support obligation' is broadly defined to include a child support debt that 'accrues before, on or after' the date of the order for relief [See 11 U.S.C. §101(14A)], 11 U.S.C. §362(B)(2)(C) excepts from the stay income withholding orders imposed before, on or after the filing date." In re Worland, 2009 Bankr. LEXIS 1512 (Bankr. S.D. Ind. 2009), citing In re Gellington, 363 B.R. 497, 50-502 (Bankr. N.D. Tex 2007).

12. HRA, through its OCSS/SCU program, stopped collection of pre-petition arrears and amended the income execution order to only continuing obligation amounts (at a rate of $3,000 monthly) as soon as it became aware of the bankruptcy filing. The debtor did not include the City in its creditor matrix. The only City agency sent notice of the filing was the Department of Finance. Thereafter, once implemented by the employer, .it only collected the post-petition obligation. Payments for post-petition child support is beyond the purview of a plan and the Bankruptcy Court's jurisdiction. In re Burnett 646 F.3d 575, 582. (8th Cir. 2011)(Recovery of post-petition spousal support is permitted and cannot be included in a plan because it is for an unmatured claim at time a case is filed for which a claim cannot be filed under Bankruptcy Code §502(b)(5), and, to extent there is a continuing post-petition support obligation, a confirmed plan cannot affect that obligation, and the creditor may "recover such post-petition domestic support obligations through income withholding that exceeds the monthly payments set out in [the debtor's] plan" Id at 583). See also In re Hutchens, *supra*, 480 BR 374, 383-384 (Bankr. M.D. Fla 2012)(any post-petition domestic support obligation can be recovered through wage garnishment and withholding of income beyond monthly payment amounts set forth in a confirmed plan), and In re Foster 319 F.3d 495, 497 (9th Cir. 2003)(in an analogous situation, post-petition interest on a child support obligation is not part of the bankruptcy estate and cannot be included in a chapter 13 plan)

13. While income execution continued for pre-petition arrears until HRA became aware of the bankruptcy filing, this is also not a stay violation. In Worland, post-petition garnishment of pre-petition DSO arrears was held to not be a violation of the automatic stay. The BACPA amendments appeared specifically enacted to permit garnishment of pre-petition arrears (a stay exemption being unnecessary to garnish post-petition arrears). In re Worland, 2009 Bankr. LEXIS 1512 (Bankr. S.D. Ind. 2009), citing In re Gellington, 363 B.R. 497, 50-502 (Bankr. N.D. Tex 2007).

14. In Worland, the court therein found that garnishment of pre-petition DSO arrears violated the terms of a confirmed plan, because under Bankruptcy Code §1327 wages were dedicated to plan payments, the DSO claim was provided for by the plan, and hence the DSO claimant was bound by the terms of the plan.

15. It is HRA's practice to stop income executions for pre-petition DSO arrears if it is has notice of a bankruptcy filing and that a Chapter 13 plan has been filed which provides for payment of DSO arrears. In the case at hand it had no knowledge of the bankruptcy filing until December 17, 2018. Regardless, garnishment of pre-petition DSO arrears is not a violation of the automatic stay. It is also not a violation of an order confirming a plan, since the Plan herein has not been confirmed. HRA would have ceased execution for pre-petition DSO arrears if it had been given notice of bankruptcy filing and knew of the filing of the Plan, even before confirmation, but it was not given any notice of the filing of the case or the Plan, much less any knowledge of a confirmation which has yet to occur.

16. HRA cannot be found to have violated the terms of an unconfirmed plan. In re Powers 2010 Bankr. LEXIS 825 (Bankr. S.D. Ind. 2010)(actions to collect a DSO not stayed, and also not a violation of a confirmed plan, because no plan had been confirmed). HRA should

likewise not be found to have violated any ultimate confirmed plan retroactively, or nunc pro tunc, for having continued execution of pre-petition DSO arrears prior to becoming aware of the bankruptcy filing, since it couldn't even have known a plan was proposed if it was unaware of the filing of the bankruptcy.

17. HRA should also not be subject to turnover. HRA does not itself receive the payments. Payments are made through a State system and are routed to the custodial parent. Nor should HRA by liable for attorneys' fees. The Motion does not name HRA or the City, but to the extent there would be any implication of HRA, the Motion seeks relief for violation of the automatic stay and as aforesaid collection of pre-petition DSO arrears is specifically exempted from the automatic stay.

18. For all of the foregoing reasons, the Motion should be denied with respect to any relief sought with respect to HRA and the City.

Dated:    New York, New York
         January 31, 2019

ZACHARY CARTER
Corporation Counsel of the
  City of New York
Attorney for the City of New York
100 Church Street, Room 5-233
New York, New York 10007
(212) 356-2138
hughs@law.nyc.gov

By:    /s/ Hugh Shull
       Hugh H. Shull III (HS-0236)
       Assistant Corporation Counsel
       .